1

2

3

4                              UNITED STATES DISTRICT COURT

5                              EASTERN DISTRICT OF CALIFORNIA

6

7   W.V.S.M.,                                    No.  1:25-cv-01489-KES-HBK (HC)

8                       Petitioner,
                                                 ORDER GRANTING PETITION FOR WRIT
9          v.                                    OF HABEAS CORPUS

10  MINGA WOFFORD, Administrator of              Docs. 1, 2
    Mesa Verde ICE Processing Center;
11  SERGIO ALBARRAN, Acting Field Office
    Director of the San Francisco Immigration
12  and Customs Enforcement Office; TODD
    LYONS, Acting Director of U.S.
13  Immigration and Customs Enforcement;
    KRISTI NOEM, Secretary of the United
14  States Department of Homeland Security;
    PAMELA BONDI, Attorney General of the
15  United States,

16                      Respondents.

17

18         Petitioner W.V.S.M. entered the United States in March 2024, when he was a minor, with

19  his mother and younger sister.[1]  He was detained by immigration officials upon entry, but

20  immigration officials released him after determining that he was neither a danger nor a flight risk.

21  Over the course of the next year-and-a-half, petitioner lived in Albany, New York with his

22  family, where he attended high school, studied English, and maintained a clean criminal record.

23  On August 6, 2025, Immigration and Customs Enforcement ("ICE") agents arrested and detained

24  him during a worksite raid.

25         On November 4, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

26  motion for a temporary restraining order, Doc. 2, arguing that his re-detention without a pre-

27  _____

28  [1] Petitioner's motion to proceed under pseudonym was granted by separate order.

                                                  1

1    deprivation hearing violates the Due Process Clause of the Fifth Amendment.  For the reasons

2    explained below, the petition for writ of habeas corpus is granted.

3    **I.    Background**[2]

4         On March 22, 2024, petitioner crossed the southern border with his mother and younger

5    sister, and he was encountered by immigration officials shortly after entry.  Doc. 1 at ¶ 35.

6    Petitioner was a minor at the time.  *Id.*  Immigration officials initially detained him and his family

7    but then released them pending their removal proceedings.  *See id.*  Immigration officials

8    provided petitioner with an order of release on recognizance which stated that he was being

9    released "in accordance with" 8 U.S.C. § 1226, provided that he comply with certain conditions.[3]

10   *Id.*; Doc. 9-1, Jerome Decl., Ex. 1.  The regulations that authorize immigration authorities to

11   release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the

12   satisfaction of the officer that such release would not pose a danger to property or persons" and

13   that the noncitizen is "likely to appear for any future proceeding."[4]  8 C.F.R. § 1236.1(c)(8).

14   "Release [therefore] reflects a determination by the government that the noncitizen is not a danger

15   to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal.

16   2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

17        Following his release, petitioner and his family settled in Albany, New York, and he and

18   his family built a life there.  Doc. 1 at ¶¶ 37–38.  Petitioner attended high school in Albany and

19

20   [2] The facts set out in this section come from petitioner's verified petition and other evidence in
     the record.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus]

21   as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*,
     833 F.2d 196, 197–98 (9th Cir. 1987)).

22

23   [3] Those conditions are that he was required to report for one in-person check-in and for
     immigration court hearings, that he was required to assist ICE with obtaining any necessary travel

24   documents, that he not break any law, that he surrender for removal if required to do so, and that
     he seek authorization to move.  Doc. 9-1, Jerome Decl., Ex. 1.  Petitioner was not required to

25   attend regular check-ins, wear a tracking device, or post bond.  Doc. 1-1, Silva Decl. at ¶ 27; Doc.
     1 at ¶ 35.

26

27   [4] Respondents assert that petitioner was released, in part, due to a lack of bed space.  *See* Doc. 9-
     1, Jerome Decl. at ¶ 7.  That does not change the fact that petitioner was first required to

28   demonstrate to immigration authorities that he was not a flight risk or danger, as required by 8
     C.F.R. § 1236.1(c)(8).

took English classes. *Id.* A letter of support from his English teacher describes him as hard-working, focused, and eager to learn. *See* Doc. 1-3 at 10. During vacations, he stayed with his brother in Buffalo, New York, assisting him with his work for a roofing company. Doc. 1 at ¶¶ 37, 39. He volunteered in a community project and replaced the roof on a veteran's home. *Id.* ¶ 41. Petitioner sought relief in his immigration proceedings, attended all hearings as required, and maintained a clean criminal record, which respondents do not dispute. *See id.* ¶¶ 35, 42; Doc. 1-1, Silva Decl. at ¶ 50. Respondents' opposition asserts, without evidentiary support, that petitioner violated a release condition by working without authorization. *See* Doc. 9 at 2–3, 5–6. Respondents do not provide evidence of any such release condition. While the declaration of Deportation Officer Jerome states that plaintiff does not have employment authorization, it notably does *not* allege that petitioner violated his release conditions. *See* Doc. 9–1.

On August 6, 2025, ICE agents arrested petitioner during a targeted enforcement operation at a worksite in Buffalo; petitioner was not the target of that enforcement operation. Doc. 9-1, Jerome Decl. at ¶ 8. Petitioner asserts that the agents identified themselves as ICE agents to the workers at the site and then immediately arrested him. Doc. 1 at ¶ 44. Respondents allege that the workers "attempted to abscond" and that the agents caught petitioner after a brief chase. Doc. 9-1, Jerome Decl. at ¶ 8. Petitioner disputes that he attempted to flee. *See* Doc. 11 at 10–11; Doc. 1 at ¶¶ 44, 46. Respondents indicate that ICE agents asked petitioner if he had any documents that would allow him to be present in the United States, and when he did not provide such documentation, they detained him. Doc. 9-1, Jerome Decl. at ¶ 8. Petitioner asserts that the agents demanded that he sign voluntary departure documents, but he refused to do so. Doc. 1 at ¶ 47. As respondents acknowledge, petitioner had previously been ordered released on his own recognizance and was enrolled in the Alternatives to Detention Program. *See* Doc. 9–1 at 4. Respondents do not assert that petitioner's release order had been cancelled before they detained him. *See* Doc. 9-1.

Petitioner was detained at Buffalo Federal Detention Center for nearly two months. Doc. 1 at ¶ 50. He indicates that, during the first week, he was held in an overcrowded cell where he was not provided with potable water, and he developed kidney stones as a result. *See id.* ¶¶

50–51.  He was later moved to a detention center in Louisiana, where he stayed for three days, but was then moved to Mesa Verde Detention Center in Bakersfield, California, where he remains detained.  *Id.* ¶¶ 56–57, 59.  His detention has prevented him from completing his high school education.  *See* Doc. 1 at ¶¶ 51, 71.

## II.    Procedural History

On November 4, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2.  He argues in both of those filings that the Due Process Clause required that he be provided a hearing prior to his re-detention.  *See* Docs. 1, 2.  The Court set a briefing schedule and provided notice to the parties that it intended to rule directly on the petition for writ of habeas corpus.  Doc. 6; *see* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).  Respondents filed an opposition to the petition on November 12, 2025, Doc. 9, and petitioner filed a reply on November 13, 2025, Doc. 11.

## III.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

4

1    *Davis*, 533 U.S. 678, 687 (2001).

2    **IV.    Discussion**

3    Civil immigration detention is typically justified only when a noncitizen presents a risk of

4    flight or danger to the community.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v.*

5    *ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner argues that the Due Process

6    Clause bars the government from re-detaining him without first providing a hearing where it must

7    prove he is a flight risk or danger.  Doc. 1 at ¶¶ 75–116.  Petitioner's due process claim is

8    analyzed "in two steps: the first asks whether there exists a protected liberty interest under the

9    Due Process Clause, and the second examines the procedures necessary to ensure any deprivation

10   of that protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-

11   01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

12   *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

13   **a.  Liberty Interest**

14   A protected liberty interest may arise from a conditional release from physical restraint.

15   *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

16   arrest and detain an individual, a protected liberty interest under the Due Process Clause may

17   entitle the individual to procedural protections not found in the statute.  *See id.* (due process

18   requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.

19   778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

20   (same, in parole context).  To determine whether a specific conditional release rises to the level of

21   a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

22   conditional release in the case before them with the liberty interest in parole as characterized by

23   *Morrissey*."[5]  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

24   ─────────────────

25   [5] Respondents argue that reliance on *Morrissey* is misplaced because *Morrissey* arose in the
     context of parole from a criminal conviction, not release from immigration detention.  Doc. 9 at 6.
26   But just like a parolee, noncitizens are entitled to the protections of the Due Process Clause.
     *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (""[T]he Due Process Clause applies to all 'persons'
27   within the United States, including [non-citizens], whether their presence here is lawful, unlawful,
     temporary, or permanent.");  *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)
28   ("[T]he government's discretion to incarcerate non-citizens is always constrained by the

5

1   marks and citation omitted).

2         In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide

3   range of things open to persons" who have never been in custody or convicted of any crime,

4   including to live at home, work, and "be with family and friends and to form the other enduring

5   attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly

6   subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring,

7   his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied

8   on at least an implicit promise that parole will be revoked only if he fails to live up to the parole

9   conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."

10  *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued

11  liberty." *Id.* at 481–84.

12        Immigration officials' release of petitioner on his own recognizance pending his

13  immigration proceedings was similar. It allowed petitioner to live with his family in New York,

14  attend high school, and volunteer in his community.

15        Confusingly, respondents both take the position that petitioner is subject to 8 U.S.C.

16  § 1225(b)(2)(A), which mandates detention, and also "urge the Court [to] refer the matter for [an]

17  IJ detention hearing." *See* Doc. 9 at 4–7. Section 1225(b)(2) does not allow for bond hearings.

18  *Jennings v. Rodriguez*, 583 U.S. 281, 297–303 (2018). In any event, respondents are incorrect

19  that section 1225(b)(2) applies to petitioner. Respondents argue that section 1225(b)(2)(A)

20  applies because petitioner is an "applicant for admission." Doc. 9 at 4. That argument is

21  _____

22  requirements of due process"). While it is true that Congress may make "rules [as to noncitizens]
    that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003),

23  legislatures may also make rules as to convicted criminals that would be unacceptable if applied
    to law-abiding citizens, *see Morrissey*, 408 U.S. at 482 ("[T]he State properly subjects [parolees]

24  to many restrictions not applicable to other citizens . . . ."). As other courts have recognized in
    rejecting a similar argument, "[i]f a parolee serving out a sentence for a violent crime, and subject

25  to highly restrictive conditions of release, has a sufficiently strong liberty interest[] to be entitled

26  to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely
    has a similar entitlement." *See Guillermo M. R. v. Kaiser*, No. 25-CV05436-RFL, 2025 WL

27  1983677, at *6 (N.D. Cal. July 17, 2025). "Given the civil context [of immigration detention],
    [petitioner's] liberty interest is arguably greater than the interest of parolees in *Morrissey*."

28  *Ortega*, 415 F. Supp. 3d at 970.

1  unpersuasive for the reasons set forth in *Guerrero Lepe v. Andrews, et al.*, No. 1:25-CV-01163-

2  KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025).

3       Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to

4  petitioner, the government previously represented to petitioner, in releasing him on his own

5  recognizance, that he was being released pursuant to section 1226(a).  Doc. 9-1, Jerome Decl.,

6  Ex. 1.  Under section 1226(a), petitioner is entitled to a bond hearing, and any custody

7  redetermination would have to be based on whether petitioner is "a threat to national security, a

8  danger to the community at large, likely to abscond, or otherwise a poor bail risk."  *In re Guerra*,

9  24 I. & N. Dec. 37, 40 (BIA 2006).  Petitioner's prior release pursuant to section 1226(a) created

10  a reasonable expectation that he would be entitled to retain his liberty so long as he was not a

11  flight risk or danger.  *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on

12  governmental representations may establish a legitimate claim of entitlement to a constitutionally-

13  protected interest).  As another court recognized in this context, once the government "elect[s] to

14  proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings."

15  *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21,

16  2025).  Even if section 1225(b) did apply, petitioner has a protected liberty interest based on the

17  government's prior representation to him that his release was pursuant to section 1226, combined

18  with the year he spent at liberty while relying on that representation.

19       The Court finds that petitioner has a protected liberty interest in his release.  *See*

20  *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

21  2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

22  is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

23  1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

24  been released have a strong liberty interest).  The Court must therefore determine what process is

25  due before the government may terminate his liberty.

26       **b.  *Mathews* Factors**

27       Due process "is a flexible concept that varies with the particular situation."  *Zinermon v.*

28  *Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be

7

1    evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872

F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free

from detention.  "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for over a year,

and during that time, began a life in New York, attending high school, living with his family, and

volunteering in his community.  His detention denies him that freedom.[6]

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the

petitioner] has not received any bond or custody redetermination hearing."  *A.E. v. Andrews*,

No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil

immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a

noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690;

*Padilla*, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history.  *See* Doc. 1 at ¶¶ 8, 25, 57.

---

[6] Respondents acknowledge that petitioner "has a strong liberty interest," but argue that "his is a
lesser liberty interest because he is a non-citizen subject to removal upon issuance of a final order
of removal[,]" citing *Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011).  Doc. 9 at 6.
Their reliance on *Diouf* is misplaced because that case concerned a noncitizen who had already
been ordered removed, and the Ninth Circuit found that "at the margin" such detainees may "have
a lesser liberty interest."  *Diouf*, 634 F.3d at 1086–87.  The Ninth Circuit also qualified that
statement: "Regardless of the stage of the proceedings, the same important interest is at stake—
freedom from prolonged detention. The liberty interests of persons detained under § 1231(a)(6)
are comparable to those of persons detained under § 1226(a)."  *See id.*  Here, petitioner is subject
to § 1226(a), as explained above.  The fact that petitioner might be granted relief from removal—
if he prevails on his anticipated asylum or Special Immigrant Juvenile Status ("SIJS")
applications—further undermines respondents' argument.  *See* Doc. 1-1, Silva Decl. at ¶¶ 25–26,
63 (noting that petitioner intends to apply for asylum and SIJS).

1    Although respondents' opposition asserts that petitioner violated a release condition by

2    working without authorization, *see* Doc. 9 at 2–3, 5–6, but they do not provide any support for

3    their allegation that this violated petitioner's release conditions.  Respondents do not provide

4    evidence that petitioner's release conditions addressed working restrictions or that the

5    government informed him of any such condition.  *See* Doc. 9.  The one-page document

6    respondents provide as setting out petitioner's conditions of release—the order of release on

7    recognizance—does not include such a restriction.  *See* Doc. 9-1, Jerome Decl., Ex. 1.  Moreover,

8    while the declaration of Deportation Officer Jerome states that petitioner does not have

9    employment authorization, it notably does *not* allege that petitioner violated his release

10   conditions.  *See* Doc. 9–1.

11   Respondents' contention that agents revoked petitioner's release for cause, for working

12   without authorization, is inconsistent with the evidence.  Respondents do not provide any

13   evidence that petitioner's release was revoked for cause.  *See* Doc. 9.  Rather, the declaration of

14   the deportation officer states that "[p]etitioner was not the target of the enforcement operation,"

15   and that petitioner was detained pursuant to INA § 235(b)(2), 8 U.S.C. § 1225(b)(2).  Doc. 9-1,

16   Jerome Decl. at ¶¶ 8, 10.  Respondents maintain that section 1225(b)(2) requires petitioner's

17   mandatory detention without any showing of cause.

18   Respondents' argument that petitioner violated a criminal statute, 8 U.S.C. § 1324a, by

19   working without authorization is meritless.  *See* Doc. 9 at 2–3.  Section 1324a targets employers

20   who hire, recruit, or refer unauthorized noncitizens for employment and who fail to comply with

21   employment-verification requirements; it does not penalize noncitizens for working without

22   authorization.  *See* 8 U.S.C. § 1324a.  "Congress made a deliberate choice not to impose criminal

23   penalties on aliens who seek, or engage in, unauthorized employment." *Arizona v. United States*,

24   567 U.S. 387, 405 (2012) (finding Arizona's enactment of a misdemeanor criminal offense for

25   unauthorized work by an alien preempted by federal law, which did *not* impose a criminal penalty

26   on aliens for working without authorization); *Puente Arizona v. Arpaio,* 821 F.3d 1098, 1107 (9th

27   Cir. 2016) (noting *Arizona* held that "Congress 'made a deliberate choice' to punish employers

28   instead of employees with criminal sanctions under IRCA").

9

1    While, assuming respondents' version of the interactions when ICE detained petitioner at

2    the worksite to be true, agents may have had a basis to temporarily detain petitioner for further

3    processing and investigation, that investigation would have quickly revealed that petitioner had an

4    existing release order in place.[7]   As respondents' evidence shows, petitioner had previously been

5    ordered released on his own recognizance and was enrolled in the Alternatives to Detention

6    Program.  *See* Doc. 9–1 at 4.  And respondents do not assert that petitioner's release order had

7    been cancelled or was not in effect when ICE detained him.  *See* Doc. 9, Doc. 9–1.  Rather, the

8    deportation officer's declaration sets forth the government's asserted basis for petitioner's

9    detention:  "Petitioner is subject to mandatory detention pursuant to INA § 235(b)(2) [8 U.S.C.

10   § 1225(b)(2)]."  Doc. 9–1 at ¶ 10.  This is consistent with the government's recent reinterpretation

11   of section 1225(b)(2) to apply to vast numbers of noncitizens who entered the country without

12   authorization, regardless of whether the government previously released the noncitizen pursuant

13   to section 1226(a), as here.  However, as addressed above, petitioner remains subject to section

14   1226(a), not section 1225(b)(2).

15    Third, although the government has a strong interest in enforcing the immigration laws,

16   the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,

17   415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025

18   WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that

19   "the State has an *overwhelming interest* in being able to return the individual to imprisonment

20   without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in

21   revoking parole without some informal procedural guarantees.").  In immigration court, custody

22   hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the

23   government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward

---

24

25   [7] As noted above, respondents allege that the workers at the site "attempted to abscond" and that
     the agents caught petitioner after a brief chase.  Doc. 9-1, Jerome Decl. at ¶ 8.  Petitioner disputes
26   that he attempted to flee.  *See* Doc. 11 at 10–11; Doc. 1 at ¶¶ 44, 46.  Respondents also allege that
     ICE agents asked petitioner if he had any documents that would allow him to be present in the
27   United States and detained him when he did not provide such documentation.  Doc. 9-1, Jerome
     Decl. at ¶ 8.  In contrast, petitioner maintains that "he fully cooperated, did not resist, and
28   followed all instructions given by agents."  Doc. 1 at 46.

1   doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

2           **c.   Remedy**

3           On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

4   should have been provided before ICE kept petitioner detained after determining that he was

5   subject to an existing release order.  "'[T]he root requirement' of the Due Process Clause" is

6   "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant

7   protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting

8   *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the

9   *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing

10  *before* the State deprives a person of liberty . . . .").  Consistent with the decisions of numerous

11  other courts in this circuit who ruled on this issue, the burden will be on the government to prove

12  that petitioner is a flight risk or danger to the community by clear and convincing evidence at any

13  such bond hearing.  *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL

14  2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); *Garcia*, 2025 WL

15  1927596, at *5; *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D.

16  Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*,

17  No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No.

18  22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No.

19  20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). [8]

20  / / /

21  / / /

22  
23  [8] Although respondents argue that petitioner is subject to the mandatory detention provision of
    § 1225(b)(2), they also appear to acknowledge that the Court should require a bond hearing
24  before an immigration judge:
25          In this case, Respondents concede that endless liberty constraint without review by
            a neutral decisionmaker is irreparable harm. However, the remedy is to refer the
26          matter for IJ bond hearing. . . . Respondents submit that such a hearing will permit
            a neutral decisionmaker to assess whether continued detention is warranted or
27          unwarranted by legitimate agency goals. . . . This Court must thus deny TRO relief
            and compel bond / parole revocation hearing.
28  Doc. 9. at 5–6.

11

**V.    Conclusion and Order**

Accordingly,

1.  The petition for writ of habeas corpus, Doc. 2, is GRANTED.

2.  Respondents are ORDERED to release petitioner immediately.

3.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4.  The Clerk of Court is directed to close this matter.


IT IS SO ORDERED.

Dated:    November 19, 2025

UNITED STATES DISTRICT JUDGE